**GLANCY PRONGAY & MURRAY LLP**
Kevin F. Ruf (SBN 136901)
Marc L. Godino (SBN 182689)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: kruf@glancylaw.com
Email: mgodino@glancylaw.com

*Attorneys for Plaintiff and the Proposed Class*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEGGY TATUM on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TALKING RAIN BEVERAGE COMPANY, INC.,<br><br>Defendant. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>1. WASHINGTON CONSUMER PROTECTION ACT, WASH. REV. CODE CH. 19.86<br><br>2. CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE §§1750<br><br>3. UNFAIR COMPETITION LAW, UNLAWFUL PRONG, CAL. BUS. & PROF. CODE §§17200<br><br>4. UNFAIR COMPETITION LAW, UNFAIR PRONG, CAL. BUS. & PROF. CODE §§17200<br><br>5. FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE §§ 17500<br><br>6. BREACH OF EXPRESS WARRANTY<br><br>7. BREACH OF IMPLIED WARRANTY<br><br>8. NEGLIGENT MISREPRESENTATION<br><br>9. FRAUD BY OMISSION<br><br>DEMAND FOR JURY TRIAL |

CLASS ACTION COMPLAINT

**TABLE OF CONTENTS**

I.     JURISDICTION AND VENUE.................................................................1

II.    NATURE OF THE ACTION .................................................................2

III.   PARTIES.............................................................................................3

IV.   FACTUAL ALLEGATIONS ................................................................4

     A.    Defendant Does Not Disclose That Their Products Are Artificially Flavored. .........4

     B.    Federal Regulations and State Law Require Defendant to Disclose dl-malic acid as an Artificial Flavor in the Products. ..........................................11

     C.    Defendant's Competitors Label Their Products Lawfully. ......................................14

     D.    Plaintiff and the Class Pay a Price Premium for Defendant's Misbranded Products.........................................15

V.    DELAYED DISCOVERY ....................................................................17

VI.   CLASS ACTION ALLEGATIONS ......................................................17

VII.  CAUSES OF ACTION ........................................................................20

VIII. PRAYER FOR RELIEF ......................................................................34

IX.   JURY DEMAND .................................................................................35

1    Plaintiff Peggy Tatum ("Plaintiff"), on behalf of herself and all others similarly situated, by

2  and through undersigned counsel, hereby brings this action against Talking Rain Beverage

3  Company, Inc. ("Talking Rain" or "Defendant") and upon information and belief and investigation

4  of counsel, alleges as follows:

5  **I.      JURISDICTION AND VENUE**

6    1.    Plaintiff brings this proposed class action in this Court pursuant to the Class Action

7  Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005).

8    2.    This Court has subject matter jurisdiction over this proposed class action under

9  CAFA, 28 U.S. Code § 1332(d), which provides the federal courts with original jurisdiction over

10  any class action in which any member of the plaintiff class is a citizen of a state different from any

11  defendant and the matter in controversy exceeds $5 million in the aggregate, exclusive of interest

12  and costs.

13    3.    Minimal diversity as required by 28 U.S.C. §§ 1332(a)(1), (d)(2)(A) is satisfied as

14  Plaintiff as well as other members of the proposed class are citizens of states other than Washington

15  and Defendant is a citizen of Washington.

16    4.    The jurisdictional amount in controversy is satisfied. Plaintiff alleges on information

17  and belief that the total claims of the members of the proposed Class in this action exceed $5 million

18  in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5).

19    5.    This Court has both general and specific personal jurisdiction over the Defendant.

20    6.    This Court has personal jurisdiction over Defendant because Talking Rain has

21  affirmatively established and maintained contacts with the State of California ("State") and is

22  registered to do business in California.

23    7.    This court has general personal jurisdiction as Defendant conducts extensive

24  business in the State, is registered as a business entity in the State, and is otherwise at home in the

25  State.

26    8.    This Court further has specific personal jurisdiction arising from Defendant's

27  decisions to market, distribute, and sell the products that are the subject of this action in California.

28    9.    Defendant has sufficient minimum contacts with this State and sufficiently avails

itself of the markets and legal protections of this State through the promotion, sales, and marketing of the Products within the State to render the exercise of jurisdiction by this Court reasonable and fair.

10.     Venue is proper in this County and judicial district, in which Plaintiff resides, pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant conducts extensive business in this district and many of the events giving rise to this action, including specifically the Plaintiff's purchases described herein, occurred in this district.

II.     **NATURE OF THE ACTION**

11.     This is a national consumer class action for the violation of state consumer protection, unfair competition, and false advertising statutes, and for common-law breach of warranties, negligent misrepresentation, and fraud by omission.

12.     Defendant manufactures, labels, distributes, advertises, and sells the "Sparkling Ice" line of soft drinks including but not limited to "Classic Sparkling Ice" and "Sparkling Ice + Caffeine."

13.      "Classic Sparkling Ice" and "Sparkling Ice + Caffeine" products are offered in at least twenty-three different flavor varieties.

14.     All of these varieties are labeled as premium, naturally-flavored beverages containing only natural flavors.

15.     At least fifteen of these (the "Products"), however, contain undisclosed artificial flavoring.

16.     The Products' packaging, labeling, and advertising expressly represent that these beverages are made from "natural flavors," that the flavors are "sourced from nature," and that the drinks' "colors and flavors [are] from natural sources."

17.     These representations are false.

18.     The Products all contain undisclosed artificial flavoring.

19.     Federal regulations and state consumer protection law require any food or beverage product that contains an artificial flavor to prominently disclose this fact on the product's front- and back-labels.

20.     The Products' labels omit the required disclosures.

21.     Because these labels conceal the fact that the Products are made with artificial flavors, those labels are false and misleading.

22.     The Products are also misbranded under the federal Food, Drug, and Cosmetic Act and therefore unlawful to sell anywhere in the United States.

23.     Defendant willfully conceals from consumers the fact that these Products contain artificial flavoring chemicals that simulate, resemble, and reinforce the Products' claimed natural flavors.

24.     Defendant's packaging, labeling, and advertising scheme for these Products is intended to give consumers the false impression that they are buying a premium all-natural product instead of a product that is artificially flavored.

25.     Plaintiff, who purchased the Products multiple times and was deceived by Defendant's unlawful conduct, brings this action on her own behalf and on behalf of consumers nationwide to remedy Defendant's unlawful acts.

26.     On behalf of the Class as defined herein, Plaintiff seeks an order compelling Defendant to, *inter alia*: (1) cease packaging, distributing, advertising, and selling the Products in violation of California and Washington state common and consumer protection laws; (2) inform consumers regarding the Products' misbranding; (3) award Plaintiff and the other Class members restitution, actual damages, statutory damages, and punitive damages; and (4) pay all costs of suit, expenses, and attorney fees.

## III.    PARTIES

27.     Defendant Talking Rain is incorporated in Washington state.

28.     Defendant's corporate headquarters are in Preston, Washington.

29.     Defendant is registered to do business in California under business entity number C2157728.

30.     Defendant manufactures, labels, advertises, markets, distributes, and sells the Products in California, Washington, and throughout the United States.

31.     Plaintiff Peggy Tatum is a resident and citizen of California and purchased the

Products multiple times in Contra Costa County, California, for personal and household consumption.

## IV.   FACTUAL ALLEGATIONS

### A.   Defendant Does Not Disclose That Their Products Are Artificially Flavored.

32.   Defendant's "Sparkling Ice" flavored-water beverages are sold through a variety of brick-and-mortar retail and online markets such as Vons, Ralphs, Albertsons, Smart & Final, Target, 7-Eleven, Dollar Tree, Rite Aid, CVS, Walmart, Instacart, and Amazon.

33.   Consumers can purchase the Sparkling Ice products in individual bottles or in individual-flavor or four-flavor variety packs of 12 bottles.

34.   Fifteen or more of these varieties (the "Products") contain an ingredient identified in the back-label ingredient list as "malic acid."[1]

35.   Twelve of the fifteen Products include "malic acid" as either the first or second ingredient by weight after water.[2]

36.   The "malic acid" Defendant puts in its Products is an artificial compound called dl-malic acid.

37.   Artificial dl-malic acid is a synthetic petrochemical compound synthesized from benzene or butane in a chemical manufacturing process involving highly toxic intermediates or byproducts.

38.   Dl-malic acid does not occur in nature.

39.   A commercial food-industry analytical chemistry testing lab confirmed that the "malic acid" in the Products is the artificial compound dl-malic acid.

40.   Dl-malic acid is an artificial flavoring agent that functions as a primary flavoring in

---

[1] The Products include Berry Lemonade, Black Cherry, Black Raspberry, Black Raspberry with caffeine, Blue Raspberry with caffeine, Cherry Vanilla with caffeine, Coconut Limeade, Coconut Pineapple, Fruit Punch, Ginger Lime, Grape Raspberry, Orange Passion Fruit with caffeine, Peach Nectarine, Pomegranate Blueberry, and Strawberry Watermelon. *See* www.sparklingice.com/flavors, last visited March 15, 2022.

[2] *Id.*

all the Products.

41.    All the Products' front labels display the names and images of one or more fresh, ripe, natural fruits or berries along with the representation "Naturally Flavored."

42.    These label representations convey to the consumer that the Products are made exclusively from and flavored only with natural fruits and berries or natural fruit and berry flavors.

43.    None of the Products or Products' packaging includes on either the front or back label any indication that any of the Products contains artificial flavoring chemicals.

44.    Because the Products contain added artificial flavorings that simulate, resemble, and reinforce the Products' characterizing fruit and berry flavors, the Products' front labels are required by federal regulations codified at 21 CFR 101.22 and by state consumer protection laws imposing identical requirements to disclose the presence of those artificial flavorings rather than deceptively claim on product labels and in product advertising that the Products contain only natural flavors.

45.    All of the Products' labeling omits the federal- and state-required "Artificial Flavor" or "Artificially Flavored" label disclosures.

46.    Some of the Product packaging, labeling, and advertising during the proposed Class period further included false representations stating or implying that the Products are all "Naturally Flavored" or that the Products' flavors are all derived "from Natural Sources."

47.    A Representative front label image, resized for legibility, is shown below for the individual "Black Cherry" Product.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16
17    Defendant lists the "Black Cherry" ingredients, on its Sparkling Ice website, as carbonated water,
18    malic acid, fruit and vegetable juice (for color), natural flavors, potassium benzoate (to ensure
      freshness), citric acid, sucralose, green tea extract, cherry juice concentrate . . . .
19
20           48.     Below are representative images of front labels for three additional Products.
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12



13

14      49.     None of these Product labels inform a prospective purchaser that the Products are

flavored with an artificial petrochemical flavoring agent.

15      50.     The Product multi-pack labeling is similarly deceptive.

16

17      51.     Below is a true and accurate image of representative packaging for one of the four-

flavor variety 12-packs.

18
19
20
21
22
23



24
25
26
27
28

52.	This pack includes three Products (Black Cherry, Peach Nectarine, and Coconut Pineapple) that contain the artificial flavoring dl-malic acid.

53.	The packaging and labeling show no indication that any of the Products in the pack contain dl-malic acid, an artificial flavor.

54.	The packaging of this variety pack expressly claims that all four flavors in the 12-pack are "Naturally Flavored."

55.	Other multi- packs are similar; they include artificially-flavored Products but fail to disclose that any of the contents are artificially flavored.

56.	The packaging in fact, makes express claims that all the product varieties in the 12-pack are "Naturally Flavored" and that they contain "Colors & Flavors from Natural Sources."

57.	The malic acid Defendant adds to the Products is a synthetic manufactured petrochemical called dl-malic acid.[3]

58.	Under federal regulation and state law, the product ingredient list is also required to disclose the presence of artificial flavorings.

59.	The Products' ingredient lists fail to sufficiently identify the "malic acid" in the Products either as the artificial petrochemical version of malic acid or as an artificial flavor.

60.	Federal regulations and state consumer protection laws require all food products that contain artificial flavor to disclose this fact to consumers prominently on both the front and back labels.

61.	Defendant fails to do so, intentionally misleading consumers to believe that all these Products are naturally flavored when in fact they contain artificial flavoring.

62.	Neither the individual Product labels nor the Products' multi-pack packaging and labels include any of the required artificial-flavor disclosures even though the dl-malic acid added to the Products is an artificial petrochemical.

---

[3] D-malic acid is also called d-hydroxybutanedioic acid or (R)-(+)-2-Hydroxysuccinic acid.

63.     Defendant's on-line advertising, a representative example of which is shown below, also misleads consumers into believing the Products contain no artificial flavors.[4]



64.     Defendant's Sparkling Ice flavors are not all "sourced from nature;" fifteen of the flavors are flavored with artificial dl-malic acid, a chemical not found in nature.

65.     Defendant makes additional representations on its website that the Products' flavoring is from "natural sources" and, as it does in most of its marketing, further uses images of fresh fruits and berries to induce consumers into incorrectly believing the Products are made only from real fruit and berries and other natural flavoring.[5]

66.     Below is a true and accurate representation of other of Defendant's marketing and advertising.[6]

_____

[4] www.sparklingice.com/flavors; last visited on January 20, 2022.
[5] www.sparklingice.com/story, last visited January 21, 2022.
[6] Id.

1
2
3
4
5
6
7
8



9      67.    Defendant is a sophisticated beverage manufacturer that has been in the food and

10   beverage business since 1987.

11      68.    Defendant purports to provide extensive Product information to consumers in an

12   "FAQ" section on its website.[7]

13      69.    This FAQ section provides detailed information about the Products' caffeine

14   sources, sweeteners, calories, the "Colors from Natural Sources" claim, and the Products'

15   "Nutrition Fact Panel" and how it conforms to current U.S. FDA regulations. The FAQ, however,

16   provides no information about Defendant's "Natural Flavors" labeling or claims that the Products'

17   flavors are from "Natural Sources" or "sourced from nature."

18      70.    Defendant nowhere provides consumers the legally-required disclosures that the

19   Products contain artificial flavoring, nor any way for a consumer to find this fact out other than, as

20   Plaintiff did, by subjecting the Products to chemical analysis.

21      71.    Defendant knows or should know that the dl-malic acid it adds to its Products is a

22   synthetic petrochemical.

23      72.    Food-ingredient suppliers offer beverage manufacturers both the natural and

24   artificial versions of malic acid.

25      73.    Defendant chose to purchase the artificial version of malic acid, likely because it is

26
27   _____

28   [7] www.sparklingice.com/faq, last visited January 21, 2022.

cheaper than the natural compound, but labels the Products as if they contained the natural compound instead.

74.     Defendant, as a sophisticated food and beverage manufacturer, made a conscious choice not to label the Products in accordance with federal regulations and state statute and common law.

75.     Defendant willfully conceals from consumers the fact that the Products are artificially flavored.

76.     Defendant knew or should have known that the Products are mislabeled and misbranded and violate federal regulations and state consumer protection laws.

**B.     Federal Regulations and State Law Require Defendant to Disclose dl-malic acid as an Artificial Flavor in the Products.**

77.     An artificial flavor is "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 CFR 101.22(a)(1).

78.     The dl-malic acid that Defendant puts in these Products is derived from petrochemicals, not from "a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material. . . ."

79.     The dl-malic acid in the Products provides the characterizing tart flavor of the fruits and berries listed and depicted on the Products' front labels.

80.     The dl-malic acid that Defendant puts in the Products is therefore an artificial flavor under federal regulations and state law.[8]

81.     Because they contain an artificial flavor, federal regulations and state laws require the Products to display both front- and back-label disclosures to inform consumers that the Products are artificially flavored.

---

[8] Both the natural form and the artificial form of malic acid are considered "GRAS" – Generally Regarded as Safe – under U.S. food labeling laws. The artificial form, dl-malic acid, however, has not been extensively tested for safety in food.

82.     The Products' labeling shows none of the required disclosures.

83.     Defendant therefore violates federal regulations and state consumer protection laws.

84.     U.S. Food, Drug, and Cosmetic Act regulations require that a food's label accurately describe the food product, its characterizing flavors, and all ingredients.  See, 21 C.F.R. 102.5(a).

85.     Under federal regulations, any recognizable primary flavor identified on the front label of a food product is referred to as a "characterizing flavor."

86.     Federal regulations require that if "the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means" then "such flavor shall be considered the characterizing flavor". See 21 C.F.R. 101.22(i).

87.     Each of the fruits and berries listed or depicted on the Products' front-labels are primary recognizable flavors and are therefore by law considered characterizing flavors.

88.     If a product's characterizing flavor is not created exclusively by the named flavor ingredient, the product's front label must state that the product contains either natural or artificial flavorings or both.

89.     If any artificial flavor "simulates, resembles or reinforces" the characterizing flavor in the product, the food must be prominently labeled as "Artificially Flavored." 21 C.F.R. 101.22(i) (3), (4).

90.     Federal regulations at 21 C.F.R. 101.22(c) require all foods containing artificial flavoring to include:

> A statement of artificial flavoring . . . [which] shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such a statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.

91.     A food product's label must also include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance . . . and consumers may otherwise be misled about the presence or absence of the ingredient(s) or

1    component(s) in the food." 21 C.F.R. 102.5(c).

2          92.    Such statement must be in clearly noticeable print on the front display panel and of

3    sufficient size for an average consumer to notice.

4          93.    The Products' labels do not include any of the required label statements.

5          94.    The Products' labels therefore violate federal regulations and the state laws of

6    California and Washington, as well as similar laws of other states.

7          95.    California law prohibits any entity from making untrue or misleading statements

8    about goods, engaging in unethical practices injurious to California residents or competing

9    corporations and other entities, and from violating FDA and other federal regulations and the laws

10   of other states.

11         96.    California's Sherman law further incorporates by reference all of the federal FDA

12   labeling regulations so that any food product that is in violation of FDA regulations also violates

13   California state law.

14         97.    The Washington Consumer Protection Act ("CPA") protects consumers from unfair

15   methods of competition and unfair or deceptive acts or practices in the conduct of any trade or

16   commerce.  A consumer may bring a claim under the Washington CPA for any act or practice that

17   has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or

18   practice not regulated by statute but in violation of public interest.  The Washington Supreme Court

19   has found that the CPA does allow claims for an out-of-state plaintiff against all persons who

20   engage in unfair or deceptive acts that directly or indirectly affect the people of Washington

21         98.    Defendant was therefore required under all these states' laws to place prominently

22   on the Products' labels a notice sufficient to allow consumers to understand that the Products

23   contain artificial flavorings.

24         99.    Defendant failed to disclose that the Products contain artificial flavors.

25         100.   Defendant failed to accurately label the Products, deceiving consumers and at a

26   minimum violating federal regulations as well as the state laws of California, Washington, and

27   other states, rendering the Products misbranded and illegal to sell.

28         101.   Other states' laws similarly require that food product labels must disclose the

1   presence of artificial flavoring and be accurate and complete and not misleading.

2      102.   The Products are therefore misbranded and illegal to distribute or sell in commerce

3   in California, Washington, and anywhere in the U.S.

4      103.   Plaintiff and proposed Class members were unaware that the Products contained

5   artificial flavors when they purchased them.

6      104.   When purchasing the Products, Plaintiff and class members were seeking products

7   of particular qualities, specifically products that were flavored only with the natural ingredients

8   claimed on the labels and that did not contain artificial flavors.

9      105.   Plaintiff is not alone in her consumer preferences. Forbes Magazine reported that

10   88% of consumers polled indicated they would pay more for foods perceived as natural or healthy.

11   "All demographics [of consumers]—from Generation Z to Baby Boomers—say they would pay

12   more" for such products, specifically including foods with no artificial flavors.[9]

13      106.   Plaintiff and class members lost money as a result of Defendant's conduct because

14   they purchased Products that contained undisclosed and undesirable artificial flavors at a price

15   premium.

16      107.   Defendant's conduct with respect to the Products reflects this knowledge of

17   consumers' preference for natural products – not by manufacturing the Products only with natural

18   flavoring ingredients but rather by concealing the fact that the Products contain artificial flavoring.

19      **C.   Defendant's Competitors Label Their Products Lawfully.**

20      108.   Defendant not only deceives consumers but also gains an unfair commercial

21   advantage in the marketplace by deceptively labeling the Products.

22      109.   Other manufacturers of competing beverage products label their products lawfully.

23      110.   Other manufacturers of artificially-flavored fruit and berry-flavored beverage

24   products, for example, accurately and lawfully label their products as "Artificially Flavored."

25

26   _____

27   [9] Forbes Magazine, *Consumers Want Healthy Foods--And Will Pay More For Them* (February 15, 2015), *available at* https://www.forbes.com/sites/nancygagliardi/2015/ 02/18/consumers-want-

28   healthy-foods-and-will-pay-more-for-them/#4b8a6b4b75c5.

111.   Other competing manufacturers, offering products whose labels suggest as Defendant does that their products are naturally flavored, truly make their products only with natural flavoring ingredients.

112.   Defendant, however, conceals the use of artificial flavoring, thus deceiving consumers, illegally cutting costs and increasing profits, and competing unfairly and unlawfully in the marketplace.

113.   Defendant's conduct injures competing manufacturers that do not engage in the same illegal behavior. Those manufacturers compete for market share with Defendant.

114.   Defendant's competitors manufacture and market their products so as to compete lawfully. Defendant does not.

**D.     Plaintiff and the Class Pay a Price Premium for Defendant's Misbranded Products.**

115.   Plaintiff purchased the Products in California during the Class Period as defined herein.

116.   Plaintiff Peggy Tatum purchased the Products during the proposed class period at Walmart and Target stores located in and around Brentwood, California, most recently at the Target Store at 5769 Lone Tree Way, Antioch, California.

117.   Plaintiff purchased the Products at the marked retail prices, individually and in variety packs, at prices ranging from $0.80 to $1.20 per unit and from time to time at other promotional prices.

118.   Plaintiff first discovered Defendant's unlawful conduct described herein in 2022, when she learned that the Products' characterizing flavors were simulated and reinforced using artificial flavoring even though Defendant failed to disclose that fact on the Products' labels.

119.   Plaintiff was deceived by and relied upon the Products' deceptive labeling, and specifically Defendant's omission of the fact that the Products contained artificial flavorings. Plaintiff purchased the Products believing they were naturally flavored, based on the Products' deceptive labeling and failure to disclose the artificial flavoring.

120.   Plaintiff, as a reasonable consumer, is not required to subject consumer food

1    products to laboratory analysis, to scrutinize the back of the label to discover that the Products'

2    front labels are false and misleading, or to independently research information that state law and

3    federal regulations require be displayed prominently on the label of the product.

4           121.   Defendant, but not Plaintiff, knew or should have known that the Products' labeling

5    was false and in violation of federal regulations and state laws.

6           122.   Because Plaintiff reasonably assumed the Products to be free of artificial flavoring

7    based on the Products' labels and advertising, when they were not, she did not receive the full

8    benefit of her purchases. Instead of receiving the benefit of products free of artificial flavoring,

9    Plaintiff received the Products that were unlawfully labeled to deceive consumers into believing

10   that they were exclusively naturally flavored and contained no artificial flavoring, in violation of

11   federal regulations and state labeling laws.

12          123.   Plaintiff and the Class would not have purchased the Products in the absence of

13   Defendant's misrepresentations and omissions, or who not have paid premium prices for them. Had

14   Defendant not violated state law and federal regulations, Plaintiff and the Class would not have

15   been injured.

16          124.   Products that consumers believe to be naturally flavored sell at a price premium

17   compared to products that contain artificial flavors.

18          125.   The Products were therefore worth less to Plaintiff and other Class members than

19   they paid for them.

20          126.   Defendant's unlawful and deceptive labeling practices and knowing and willful

21   omissions caused Plaintiff and the Class to lose money. Plaintiff, and each Class member, altered

22   their financial positions to their detriment and suffered losses equal to the price premium they paid.

23          127.   Plaintiff intends to, desires to, and will purchase the Products again when she can

24   do so with the assurance that the Products' labels are consistent with the Products' ingredients.

25          128.   Because human memory is imperfect, Plaintiff may mistakenly purchase the

26   Products again in the future without realizing that those Products still contain artificial flavoring

27   and are still falsely labeled and advertised.

28

## V.     DELAYED DISCOVERY

129.    Plaintiff did not discover that Defendant's labeling and packaging of the Products were false and misleading until 2022 when she learned the Products contained undisclosed artificial flavoring.

130.    Plaintiff is a reasonably diligent consumer who exercised reasonable care in her purchases and consumption of the Products. Nevertheless, she would not have been able to discover Defendant's deceptive practices and lacked the means to discover them given that, like nearly all consumers, she relied on and was entitled to rely on the manufacturer's obligation to label its products in compliance with federal regulations and state law.

131.    Furthermore, Defendant's labeling practices and non-disclosures—in particular, misnaming and failing to correctly identify the artificial flavors in the ingredient list, to disclose that the Products contained artificial flavoring, or to accurately identify the kind of malic acid that Defendant puts in the Products—impeded Plaintiff's and the Class members' abilities to discover the deceptive and unlawful labeling of the Products throughout the proposed Class Period.

132.    Because Defendant actively concealed the illegal conduct, preventing Plaintiff and the Class from discovering the violations of federal regulations and state law, Plaintiff and the Class are entitled to delayed discovery and an extended Class Period tolling the applicable statute of limitations.

## VI.    CLASS ACTION ALLEGATIONS

133.    Plaintiff brings this action on behalf of herself, and all others similarly situated (the "Class") pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

134.    The nationwide Class is defined as follows:

> All U.S. residents who purchased the Products in the United States on or after April 1, 2016, and until the date the Class is certified by the Court, excluding Defendant and Defendant's officers, directors, employees, agents, and affiliates, and the Court and its staff.

135.    The Plaintiff also represents a proposed California Sub-Class.

136.    The proposed California Sub-Class is defined as follows:

All California residents who purchased the Products in California on or after April 1, 2016, and until the date the Sub-Class is certified by the Court, excluding Defendant and Defendant's officers, directors, employees, agents, and affiliates, and the Court and its staff.

137.     During the Class Period, the Products unlawfully contained the undisclosed artificial flavor dl-malic acid and were otherwise improperly labeled.  Defendant failed to label the Products to disclose the presence of artificial flavorings as required by federal regulations and state law.

138.     During the Class Period, Class members purchased one or more of the Products and incurred the same injuries as alleged herein for the Plaintiff.

139.     The proposed Class meets all criteria for a class action, including numerosity, typicality, superiority, and adequacy of representation; there is a well-defined community of interest in questions of law and fact common to the Class.

140.     The proposed Class satisfies numerosity. Defendant sells the products through numerous retailers such as Walmart, Walgreens, Ralphs, Vons, Safeway, WinCo, Albertsons, Target, Rite Aid, Amazon, and Instacart. The Class likely numbers at least in the hundreds of thousands. Individual joinder of the Class members in this action is impractical if not impossible. Addressing Class members' claims through this class action, therefore, will benefit Class members, the parties, and the courts.

141.     The proposed Class satisfies typicality. Plaintiff's claims are typical of and are not antagonistic to the claims of other Class members. Plaintiff and the Class members all purchased the Products, were deceived by Defendant's false and deceptive labeling of the Products, and lost money as a result.

142.     The proposed Class satisfies superiority. A class action is superior to any other means for adjudication of the Class members' claims because each Class member's claim is modest, based on the Products' retail purchase price which is generally averages about $0.80 to $1.20 per 17-oz bottle.  It would be highly impractical for individual Class members to bring individual lawsuits to vindicate their claims. If this action is not brought as a class action, Defendant can continue to deceive consumers, unfairly compete with other companies, and violate federal

1    regulations and state law with impunity.

2        143.    Because Defendant made misrepresentations on the label of the Products

3    themselves, all Class members including Plaintiff were exposed to and continue to be exposed to

4    the deceptive omissions and affirmative misrepresentations.

5        144.    The proposed Class representative satisfies adequacy of representation. The

6    Plaintiff is an adequate representative of the Class as she seeks relief for the Class, her interests do

7    not conflict with the interests of the Class members, and she has no interests incompatible with

8    those of other Class members. Plaintiff has retained counsel competent in the prosecution of

9    consumer fraud and class action litigation.

10       145.    There is further a well-defined community of interest in questions of law and fact

11   common to the Class, and these questions predominate over any individual questions affecting

12   individual Class members in this action.

13       146.    Questions of law and fact common to Plaintiff and the Class include:

14           a.    Whether Defendant failed to disclose the presence of an artificial

15                flavoring ingredient in the Products;

16           b.    Whether Defendant violated U.S. Food and Drug Administration

17                labeling regulations and corresponding state law;

18           c.    Whether Defendant's labeling omissions and representations

                  constituted false advertising under state law;

19           d.    Whether Defendant's conduct constituted violations of California's

20                Consumers Legal Remedies Act, Cal. Civ. Code §§1750 *et seq.*

21           e.    Whether Defendant's conduct constituted violations of California's Unfair

22                Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq.*

23           f.    Whether Defendant's conduct constituted violations of California's False

                  Advertising law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*

24           g.    Whether Defendant's conduct constituted violations of Washington's

25                Consumer Protection Act;

26           h.    Whether Defendant's conduct constituted a violation of other states'

27                consumer protection statutes;

28           i.    Whether Defendant's conduct constituted a violation of state

common-law consumer protection and unfair competition laws and statutes;

j.     Whether Defendant's advertising and label statements describing natural fruit and berry flavors were an affirmative representation of the Products' composition creating an express warranty;

k.     Whether Defendant's conduct constitutes a breach of implied warranties under state statutes and common law;

l.     Whether Defendant's conduct constitutes negligent misrepresentation;

m.     Whether Defendant's conduct constitutes fraud by omission;

n.     Whether the statute of limitations should be tolled on behalf of the Class due to Defendant's deceptive conduct in concealing the presence of artificial flavoring ingredients in the Products;

o.     Whether Plaintiff and the Class are entitled to restitution, rescission, actual damages, punitive damages, attorneys' fees and costs of suit, and injunctive relief; and

p.     Whether Plaintiff and the Class are entitled to any such further relief as the Court deems appropriate.

147.     Class members lost money as a result of Defendant's unlawful behavior.

148.     Class members altered their financial positions to their detriment and suffered individual loss in an amount equal to the price or the price premium they paid for the Products as falsely labeled and advertised.

149.     Further, Defendant has acted on grounds applicable to the entire Class, making final injunctive relief or declaratory relief appropriate for the Class as a whole.

150.     Class treatment is therefore appropriate for this Action.

**VII.**    **CAUSES OF ACTION**

### FIRST CAUSE OF ACTION:

**Violations of Washington's Consumer Protection Act
Wash. Rev. Code Ch. 19.86**

151.     Plaintiff realleges and incorporates by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

152.    Defendant's conduct violated the Washington Consumer Protection Act ("Washington CPA").

153.    The Washington CPA declares unlawful unfair methods of competition and unfair or deceptive practices in the conduct of any trade or commerce.

154.    The Washington legislature intended that its CPA would be "liberally construed" by courts and that the purpose of the act was to complement the body of federal regulations and law governing restraints of trade, unfair competition, and unfair, deceptive, and fraudulent practices in order to protect the public and foster fair and honest competition.  The Washington Supreme Court has found that the CPA does allow claims for an out-of-state plaintiff against all persons who engage in unfair or deceptive acts that directly or indirectly affect the people of Washington

155.    The Washington legislature also intended that when construing the CPA courts should be guided by final decisions of federal courts and final orders of the FTC interpreting various federal regulations and statutes dealing with same or similar consumer protection matters.

156.    Plaintiff, members of the Class, and Defendant are "persons" within the meaning of the Washington CPA.

157.    Defendant engages in "trade or commerce" within the meaning of the Washington CPA by advertising, marketing, offering for sale, and selling the Products to citizens of Washington and other states, and the harm alleged herein occurred while Defendant was engaged in that trade or commerce.

158.    Defendant violated the Washington CPA when it made false representations and omitted information regarding the presence of artificial flavoring designed to induce Plaintiff and Class members to believe the Products only contained natural flavors.

159.    These misleading and false representations were likely to mislead reasonable or ordinary consumers.

160.    Defendant's deceptive and unfair advertising to the general public and labeling of the Products had and continues to have the clear capacity to deceive a substantial portion of potential consumers in Washington and throughout the United States.

161.    Defendant's unlawful labeling and marketing of the Products have a high probability for repetition since Defendant continues to market and sell the Products and the Products continue to generate revenues for Defendant each year.

162.    Defendant inflicted the harms, described herein, against Plaintiff, the Class, and the general public in Defendant's "normal course of business".

163.   Defendant's express and implicit false claims that the Products contained only natural flavoring induced Plaintiff and the Class to purchase the Products when they would not have purchased them, or would have paid much less for them, had they known the Products contained artificial dl-malic acid as a flavoring agent.

164.   Defendant's unfair and deceptive practices have a negative impact on the public interest because they are systematic across Washington and the rest of the United States and hinder the ability of consumers to find and purchases beverages that they prefer because of the absence of artificial flavoring.

165.   Plaintiff and the Class suffered injury to their property when they lost money purchasing the Products because they were induced to falsely believe they were paying premium prices for beverages containing only natural flavors.  Had Plaintiff and the Class known about the presence of dl-malic acid in the Products, they would have paid less for the Products or not bought them at all.

166.   Plaintiff and the Class suffered financial injury to property that was  proximately caused by Defendant's employment of trade or commercial practices declared unlawful by the Washington CPA.

167.   Defendant falsely labeled and advertised the Products by concealing, suppressing, or omitting the material fact that the Products contained an artificial flavoring and Defendant intended that Plaintiff and the Class would rely upon this concealment, suppression, or omission when deciding whether to purchase the Products and how much they would pay for them.

168.   Defendant's conduct, as described herein, was also unfair to its competitors who do not make false or deceptive claims to consumers about whether their soft drinks contain artificial flavoring.

169.   As sophisticated actors in the beverage industry, Defendant knew or through the exercise of due care should have known they were engaging in unfair and deceptive methods, acts, or practices that the Washington CPA renders unlawful for persons conducting trade or commerce.

170.   Plaintiff and the Class are therefore entitled to the return of all money improperly collected by the Defendant from all those exposed to the above-described misbranding, unlawful labeling, and false advertising, and who purchased the Products when they otherwise would not have or who paid a price premium for those Products.

**SECOND CAUSE OF ACTION:**

**Violation of the Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq*. (on behalf of the California Sub-Class)**

171.     Plaintiff realleges and incorporates by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

172.     The CLRA prohibits any unfair, deceptive and unlawful practices, and unconscionable commercial practices in connection with the sale of any goods or services to consumers.

173.     Plaintiff and the California Sub-Class are consumers as defined by Cal. Civ. Code §1761(d).

174.     The Products are goods as defined by Cal. Civ. Code §1761.

175.     Defendant's failure to label the Products in accordance with federal regulations and state labeling laws, omitting the required information that the Products contain artificial flavoring, constituted unfair, deceptive, unlawful and unconscionable commercial practice.

176.     Defendant's conduct therefore violates the Consumer Legal Remedies Act.

177.     As a result of Defendant's violations, Plaintiff and the Class suffered ascertainable losses in the form of the price premiums they paid for the unlawfully labeled and marketed Products, which they would not have paid had Defendant labeled or formulated the Products in accordance with federal regulations and California law, and in the form of the reduced value of the Products purchased compared to the Products as labeled, advertised, and warranted.

178.     On or about March 24, 2022, Plaintiff sent a notice letter to Defendant which complies with California Civil Code § 1782 (a). Plaintiff sent Defendant, individually and on behalf of the proposed Class, a letter via Certified Mail, demanding that Defendant rectify the actions described above by providing monetary relief, agreeing to be bound by their legal obligations, and giving notice to all affected customers of their intent to do so.

179.      As of the filing of this Complaint Defendants have failed to agree to Plaintiffs' demands and has failed to give notice to all affected consumers, as required by California Civil Code Section 1782..

**THIRD CAUSE OF ACTION:**

**Violation of the Unfair Competition Law ("UCL"), Unlawful Prong**
**Cal. Bus. & Prof. Code §§ 17200, et seq. (on behalf of the California Sub-Class)**

180.    Plaintiff realleges and incorporates by reference each and every allegation contained elsewhere in this Complaint, as if fully set forth herein.

181.    The UCL prohibits any "unlawful," "unfair" or "fraudulent" business practice. Section 17200 specifically prohibits any "unlawful . . . business act or practice."

182.    The UCL recognizes violations of other federal regulations and state laws and statutes and considers those violations also to constitute violations of California law when the violations occur in California.

183.    Defendant's practices as described herein were unlawful at all times during the Class Period and continue to be unlawful under, *inter alia*, FDA regulations and California's Sherman Law.

184.    Among other violations, Defendant's distribution of the Products in commerce in California violated U.S. FDA packaging and labeling regulations.

185.    The Products' front labels fail to disclose that the Products contain synthetic artificial flavoring in violation of 21 CFR § 101.22 and California's Sherman Law, rendering the Products misbranded.

186.    Defendant failed to inform consumers of the presence of the artificial flavor in the Products, on either the front or back-label as required by law, and distributed the Products in interstate commerce and in California.

187.    Defendant's practices are therefore unlawful as defined in Section 17200, *et seq.*, the California Civil Code.

188.    Pursuant to California Business & Professions Code §17203, Plaintiff seek an order requiring Defendant to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendant to return the full amount of money improperly collected to all those who purchased the Products.

1

2

**FOURTH CAUSE OF ACTION:**

**Violations of the Unfair Competition Law ("UCL"), Unfair Prong**
**Cal. Bus. & Prof. Code §§ 17200, et seq. (on behalf of the California Sub-Class)**

3

4

189.     Plaintiff realleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

5

6

7

190.     Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unfair . . . business act or practice."   Defendant's practices violate the Unfair Competition Law "unfair" prong as well as well as the "unlawful" prong

8

9

10

11

191.     The Defendant's practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because the conduct is unethical and injurious to California residents and the utility of the conduct to Defendant does not outweigh the gravity of the harm to consumers.

12

13

14

15

16

17

192.     Defendant's distribution of misbranded Products in violation of federal regulations and state law may have some utility to Defendant in that it allowed Defendant to sell the Products to consumers who otherwise would not purchase an artificially-flavored food product at the retail price or at all if it were labeled correctly, and to realize higher profit margins than if the Products were formulated or labeled lawfully.  But this utility is small and is far outweighed by the gravity of the harm Defendant inflicted upon California consumers.

18

19

193.     Defendant's conduct also injures competing food product manufacturers, distributors, and sellers who do not engage in the same unlawful, unfair, and unethical behavior.

20

21

22

194.     Moreover, Defendant's practices violate public policy expressed by specific constitutional, statutory, or regulatory provisions, including the Sherman Law, the False Advertising Law, and the FDA regulations cited herein.

23

24

195.     Plaintiff's and the California Sub-Class members' purchases of the Products took place in California.

25

26

196.     Defendant labeled the Products in violation of federal regulations and California law requiring truth in labeling.

27

28

197.     Defendant consciously failed to disclose material facts to Plaintiff and the California

1   Sub-Class in Defendant's advertising and marketing of the Products.

2          198.    Defendant's conduct is unconscionable because in addition to an egregious breach

3   of consumer trust, Defendant willfully violated 21 C.F.R. § 101.22(c), which requires all foods

4   containing artificial flavoring to include a "statement of artificial flavoring . . . likely to be read by

5   the ordinary person under customary conditions of purchase and use of such food."

6          199.    Defendant's conduct is "unconscionable" because it violates, *inter alia*, 21 C.F.R. §

7   101.22, which requires all food products distributed in commerce in the U.S. for which artificial

8   flavoring provides a characterizing flavor to disclose this fact prominently on the product's front

9   label.

10          200.    Defendant intended that Plaintiff and the Sub-Class rely on Defendant's acts or

11   omissions so that Plaintiff and the other Sub-Class members would purchase the Products.

12          201.    Had Defendant disclosed all material information regarding the Products in their

13   advertising and marketing, Plaintiff and the Sub-Class would not have purchased the Products or

14   would have paid less for the Products.

15          202.    Plaintiff and the California Sub-Class suffered injury in fact and lost money or

16   property as a result of Defendant's deceptive advertising:  they were denied the benefit of the

17   bargain when they purchased the Products based on Defendant's violation of the applicable laws

18   and regulations, and purchased the Products rather than competitors' products which are lawfully

19   labeled and are either less expensive or contain no artificial flavoring.

20          203.    Plaintiff and the Sub-Class suffered an ascertainable loss of money.  Defendant's

21   acts, omissions and practices detailed herein proximately caused Plaintiff and other members of

22   the Sub-Class to suffer an ascertainable loss in the form of, *inter alia*, monies spent to purchase the

23   Products they otherwise would not have, and they are entitled to recover such damages together

24   with appropriate penalties including restitution, damages, attorneys' fees and costs of suit.

25          204.    Section 17200 also prohibits any "unfair, deceptive, untrue or misleading

26   advertising." For the reasons set forth above, Defendant engaged in unfair, deceptive, untrue and

27   misleading advertising in violation of California Business & Professions Code § 17200.

28          205.    Pursuant to California Business & Professions Code §17203, Plaintiff seeks an order

requiring Defendant to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendant to return the full amount of money improperly collected from Plaintiff and the California Sub-Class.

**FIFTH CAUSE OF ACTION:**

**Violations of California's False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, et seq. (on behalf of the California Sub-class)**

206.    Plaintiff realleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

207.    Defendant distributed, in California and in interstate commerce, Products that unlawfully fail to disclose artificial flavoring on their packaging as required by federal food labeling regulations.

208.    The Products' labeling and advertising in California falsely represent the Products as if they were solely naturally flavored.

209.    Under California's False Advertising Law, Business and Professions Code §17500 *et seq.*

"It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property . . .  to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device . . .  any statement, concerning that real or personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. . . ." Cal. Bus. & Prof. Code §17500.

210.    The labeling and advertising statements on the Products that Defendant distributes and communicates to consumers conceal the fact that the Products contain a synthetic artificial flavor and Defendant, at a minimum by the exercise of reasonable care, should have known that the labeling was false and misleading.

211.    Defendant profited from the false advertising displayed on the Products' labels.

212.    Defendant's conduct violated California's False Advertising Law.

213.    Plaintiff and the California Sub-Class are therefore entitled to the return of money improperly collected by the Defendant from all those who were exposed to the above-described false advertising in California and who purchased the Products when they otherwise would not have or who paid a price premium for the falsely advertised Products.

### SIXTH CAUSE OF ACTION:

**Breach of Express Warranties**
**Cal. Comm. Code § 2313 & similar state laws**
**(on behalf of the California Sub-Class and all states with substantially similar laws)**

214.    Plaintiff realleges and incorporates by reference the allegations found elsewhere in the Complaint as if set forth in full herein.

215.    The Products' packaging and labeling make false express representations and other claims such as, but not limited to, the Products are "Naturally Flavored," "Colors and Flavors from Natural Sources," And "[F]lavors . . . sourced from Nature."

216.    The Products' front labels also misleadingly represent, by operation of federal law, California law, and similar laws of other states, that the Products are flavored only with natural fruits or fruit flavors.

217.    The Products' front labels fail to disclose the use of artificial flavoring "immediately and conspicuously preced[ing] or follow[ing]" the names of the characterizing flavors, as required by law. See 21 C.F.R. 101.22(i)(3).

218.    Defendant's failure to disclose the use of artificial flavoring on the Products' front labels, by operation of law, informs consumers that the Products do not contain artificial flavors.

219.    The Products' front labels falsely warrant by operation of law that the Products are flavored only with the natural flavors of the listed fruits and berries.

220.    Defendant's affirmations of fact, promises, and warranties that the Products contained only natural flavors became part of the basis of the bargain between the parties and thus constituted express warranties.

221.    The Products did not conform to Defendant's affirmations of fact, promises, and warranties because they contain artificial flavors.

222.    Defendant breached its express warranties that the Products contained only natural flavors.

223.    Defendant sold the goods to Plaintiff, the California Sub-Class, and other U.S. consumers who bought the goods from Defendant.

224.    As a result, Plaintiff, the California Sub-Class, and other U.S. consumers did not receive goods as warranted by Defendant.

225.    Within a reasonable amount of time after Plaintiff discovered that the Products contained synthetic flavoring ingredients, Plaintiff notified Defendant of breach of warranties.

226.    As a proximate result of this breach of express warranties, Defendant damaged Plaintiff, the California Sub-Class, and other U.S. consumers in an amount to be determined at trial.

### SEVENTH CAUSE OF ACTION:

### Breach of Implied Warranties
### Cal. Comm. Code § 2314 & similar state laws
### (on behalf of the California Sub-Class and all states with substantially similar laws)

227.    Plaintiff realleges and incorporates all of the allegations elsewhere in the complaint as if set forth in full herein.

228.    Defendant's label representations also create implied warranties that the Products are suitable for a particular purpose, specifically as naturally-flavored beverage products containing no artificial flavors. Defendant breached this warranty as well.

229.    Because the Products do not display an "artificially flavored" disclosure as required by law, the Products' front labels misleadingly imply that the Products do not contain any artificial flavoring ingredients and are flavored solely with natural ingredients and flavors.

230.    As alleged, at the time of purchase Defendant had reason to know that Plaintiff as well as all members of the California Sub-Class and other U.S. consumers intended to use the Products as naturally-flavored beverages that did not contain artificial flavoring.

231.    This became part of the basis of the bargain between the parties.

232.    Based on that implied warranty, Defendant sold the goods to Plaintiff and other Class members who bought the goods from Defendant at premium prices.

233.    At the time of purchase, Defendant knew or had reason to know that Plaintiff, the

1    California Sub-Class members, and other U.S. consumers were relying on Defendant's skill and

2    judgment to select or furnish products that were suitable for this particular purpose, and Plaintiff

3    justifiably relied on Defendant's skill, judgment, and adherence to good faith and fair dealing

4    practices.

5            234.    The Products were not suitable for this purpose.

6            235.    Plaintiff, the California Sub-Class, and other U.S. consumers purchased the

7    Products reasonably believing they had the qualities Plaintiff sought, based on the deceptive

8    advertising and labeling, but the Products were actually unsatisfactory to Plaintiff for the reasons

9    described herein.

10           236.    In addition, Defendant breached the implied warranty of merchantability. because

11   the Products were not merchantable in California or any other state as they were not of the same

12   quality as other products in the category generally acceptable in the trade.

13           237.    The Products would not pass without objection in the trade when packaged with

14   their existing labels because the Products were misbranded and illegal to sell in California or

15   anywhere in the United States. *See, e.g.,* Cal. Comm. Code § 2314(2)(a).

16           238.    Defendant therefore breached the implied warranty of merchantability.

17           239.    The Products also were not acceptable commercially and breached their implied

18   warranty because they were not adequately packaged and labeled as required. *See, e.g.,* Cal. Comm.

19   Code § 2314(2)(e).

20           240.    The Products also were not acceptable commercially and breached their implied

21   warranty because they did not conform to the promises or affirmations of fact made on the

22   containers or labels, *see, e.g.,* Cal. Comm. Code § 2314(2)(f), and other grounds as set forth in

23   Commercial Code section 2314(2) and other states' laws.

24           241.    By offering the Products for sale and distributing the Products in California,

25   Defendant also warranted that the Products were not misbranded and were legal to sell in

26   California.

27           242.    Because Defendant misbranded the Products in several regards and were therefore

28   illegal to distribute, sell, or offer for sale, Defendant breached this warranty as well.

243.    As a result of this breach, Plaintiff, the California Sub-Class and other U.S. consumers did not receive goods as impliedly warranted by Defendant.

244.    Defendant's conduct violated similar state warranty laws in states other than California.

245.    Within a reasonable amount of time after the Plaintiff discovered that the Products contained artificial flavoring, Plaintiff notified Defendant of such breach.

246.    As a proximate result of Defendant's breach of warranty, Plaintiff and other California and other states' consumers have been damaged in an amount to be determined at trial.

247.    As a result, Plaintiff, the California Sub-Class, and other U.S. consumers are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

**EIGHTH CAUSE OF ACTION:**

**Negligent Misrepresentation**
**Cal. Civ. Code §§ 1709-1710 and the common law of all states**
**(on behalf of the Nationwide Class and the California Sub-Class)**

248.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

249.    Defendant had a duty to determine whether artificial flavoring was present in the Products and then to label the Products according to federal regulations and California and other states' law.

250.    Defendant breached this duty by failing to secure a reasonable basis for believing that the Products were naturally flavored, and did not include any artificial flavoring agents, at any time relevant to this action.

251.    Defendant was in a superior position regarding its expertise and crucial product information such that reliance by Plaintiff, the California Sub-Class, and other U.S. consumers was justified. Defendant possessed the skill and expertise to know the types of information that would influence a consumer's purchasing decision.

252.    During the Class Period, Defendant negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the Products, including the use

and presence of artificial flavoring ingredients.

253.    The label representations negligently misrepresented the Products as if they were exclusively naturally flavored.

254.    Defendant was negligent in distributing Products labeled as if they were exclusively naturally flavored and in failing to identify the Products as artificially flavored.

255.    Defendant represented the Products to Plaintiff, the California Sub-Class, and other U.S. consumers as solely naturally flavored as if this were true.

256.    Defendant intended for Plaintiff, the California Sub-Class, and other U.S. consumers to rely on this representation.

257.    Defendant's representations were not true.

258.    Defendant's Products are not exclusively naturally flavored but are instead artificially flavored as described herein.

259.    Defendant was careless in ascertaining the truth of its representations in that Defendant knew or should have known that Plaintiff, the California Sub-Class, and other U.S. consumers would not have discovered the use of artificial flavoring ingredients in the Products.

260.    Plaintiff, the California Sub-Class, and other U.S. consumers reasonably relied on this representation. They were unaware of Defendant's unlawful misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

261.    Defendant's negligence was the proximate cause of harm to Plaintiff, the California Sub-Class, and other U.S. consumers as alleged herein. Plaintiff, the California Sub-Class, and other U.S. consumers would not have purchased the Products, or would have paid less for the Products, if the true facts had been known.

262.    That reliance on Defendant's misrepresentations was a substantial factor in causing that harm.

263.    As a result, Plaintiff, the California Sub-Class, and other U.S. consumers are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

**NINTH CAUSE OF ACTION:**

**Fraud by Omission**
**Cal Civ. Code §§ 1709-1710 and the common law of all states**
**(on behalf of the Nationwide Class and the California Sub-Class)**

264.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

265.    Plaintiff brings this claim for fraud by omission pursuant to California Civil Code §§ 1709-1710 *et seq.* and the common law of all states. The elements of fraud are substantially similar from state to state, thus making nationwide class certification and adjudication appropriate.

266.    Defendant omitted material facts, in whole or in part, with the intent to induce Plaintiff and the members of the Class, the California Sub-Class, and other U.S. consumers to purchase the Products and pay premium prices for the Products. Specifically, Defendant actively concealed the truth about the Products by failing to provide the legally required "artificially flavored" disclosure on the front label of the Products as is required by California and other states' laws and federal law.

267.    Plaintiff, the Class, and the California Sub-Class, were unaware of this omitted material fact and would not have purchased the Products, or would have paid less for the Products, if they had known of the omitted fact.

268.    Plaintiff, the Class, and the California Sub-Class, suffered injuries that were proximately caused by Defendant's omissions of material facts.

269.    Defendant's omissions were a substantial factor in causing the harm suffered by Plaintiff, the Class, and the California Sub-Class, as they would not have purchased the Products at all, or would have paid less for the Products, if Defendant had properly disclosed the material fact the Products contained artificial flavoring ingredients.

270.    As a result, Plaintiff, the Class, and the California Sub-Class, are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

VIII. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself, all others similarly situated in California, and all others similarly situated in the U.S., prays for judgment against Defendant as follows:

A.  An order confirming that this action is properly maintainable as a class action as defined above, appointing Plaintiff and her undersigned counsel to represent the Class and the California Sub-Class, and requiring Defendant to bear the cost of class notice;

B.  An order declaring that the conduct complained of herein violates the California CLRA;

C.  An order declaring that the conduct complained of herein violates the California UCL;

D.  An order declaring that the conduct complained of herein violates the California FAL;

E.  An order declaring that the conduct complained of herein violates corresponding consumer protection laws in states other than California, including Washington state law;

F.  An order declaring that the conduct complained of herein violates the Washington CPA.

G.  An order declaring that the conduct complained of herein breached express warranties, implied warranties, or both;

H.  An order requiring Defendant to disgorge any benefits received from Plaintiff and the Class and any unjust enrichment realized as a result of the improper and misleading labeling, advertising, and marketing of the Products;

I.  An order requiring Defendant to pay restitution to Plaintiff and Class members so that they may be restored any money which was acquired by means of any unfair, deceptive, unconscionable or negligent acts;

J.  An award to Plaintiff and the Classes of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

K.    An award of punitive damages in an amount to be proven at trial;

L.    An order enjoining Defendant's deceptive and unfair practices;

M.    An order requiring Defendant to conduct corrective advertising;

N.    An award of pre-judgment and post-judgment interest;

O.    An award of attorney fees and costs; and

P.    Such other and further relief as this Court may deem just, equitable, or proper.

## IX.    JURY DEMAND

Plaintiff demands a trial by jury on all claims for damages. Plaintiff does not seek a jury trial for claims sounding in equity.

Dated: June 15, 2022                Respectfully Submitted,

**GLANCY PRONGAY & MURRAY LLP**

By:   *s/ Marc L. Godino*
Kevin F. Ruf (SBN 136901)
Marc L. Godino (SBN 182689)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: kruf@glancylaw.com
Email: mgodino@glancylaw.com

**ELLIOT LAW OFFICE PC**
David Elliot (SBN 270381)
Michael Dobbs
2028 3rd Avenue
San Diego, CA 92101
Tel: (619) 468-4865

*Attorneys for Plaintiff and the Proposed Class*